UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAIME NOEL LASHBROOK,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 2:16-CV-00255-LRS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 22).

## JURISDICTION

Jaime Noel Lashbrook, Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on May 11, 2012. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on September 23, 2014, before Administrative Law Judge (ALJ) Moira Ausems. Plaintiff testified at the hearing, as did Vocational Expert (VE) K. Diane Kramer. On February 11, 2015, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

**STATEMENT OF FACTS**

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of her application for SSI benefits, Plaintiff was 27 years old, and at the time of the administrative hearing, she was 30 years old. She has a high school education and no past relevant work experience.

**STANDARD OF REVIEW**

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) failing to find at step two that Plaintiff has a "severe" personality disorder; 2) rejecting Plaintiff's symptom testimony; and 3) failing to properly consider and weigh medical opinion evidence.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(I). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has "severe" medical impairments, those being polysubstance

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

abuse in early remission; mixed adjustment disorder; and mild degenerative spondylosis with mild dextroconvex curvature of the lumbar spine;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §416.967(b) in that she is able to lift and carry 20 pounds occasionally and 10 pounds frequently; she is able to stand and walk six hours in an eight hour workday and sit for six hours in an eight hour workday; she is not able to climb ladders, ropes or scaffolds; she can have no exposure to unprotected heights, moving machinery, or commercial driving; she can perform simple and routine tasks and no more than lower semiskilled (SVP-3[1]) tasks; she can have brief superficial contact with the general public; she can have superficial contact with coworkers, but no cooperative tandem work with coworkers;

4) Plaintiff's RFC allows her to perform jobs existing in significant numbers in the national economy as identified by the VE, including sorter, office cleaner and production assembler.

Accordingly, the ALJ concluded the Plaintiff is not disabled.

**SEVERE IMPAIRMENT**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be
///

---

[1] Specific Vocational Preparation as determined by the U.S. Department of Labor and found in the *Dictionary of Occupational Titles*.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 416.908.

In a footnote in her opening brief (ECF No. 14 at p. 20, n. 6), Plaintiff contends the ALJ erred in not finding Plaintiff has a "severe" personality disorder. In her decision, the ALJ noted there was a reference in the record to a personality disorder, but she found "the DSM-V[2] criteria are not well-established in the treatment notes." (AR at p. 18). In a "Progress Note" dated August 13, 2014, Kristie Lester, a Licensed Mental Health Counselor (LMHC), diagnosed the Plaintiff on Axis 2[3] with a personality disorder. (AR at p. 472). There is, however, no apparent explanation for that particular diagnosis and although it is Plaintiff's burden to prove it is a "severe" impairment, she cites to no medical evidence in the record supporting that diagnosis. Furthermore, nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. § 416.913(a). Ms. Lester is not an "acceptable medical source." It is not clear why the ALJ felt compelled to mention the personality disorder diagnosis. Nonetheless, the court cannot find, and has not been directed to, any acceptable medical evidence in the record establishing that Plaintiff has a "severe" personality disorder.

**MEDICAL OPINIONS**

---

[2] *Diagnostic and Statistical Manual of Mental Disorders,* Fifth Edition (2013).

[3] DSM-V no longer uses the multi-axial system. In prior editions of the DSM, Axis II was reserved for long-standing conditions of clinical significance, like personality disorders. https://pro.psychcentral.com/dsm-5-changes-personality-disorders-axis-ii/005008.html

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

In her decision, the ALJ noted that Plaintiff filed a prior application for Title XVI benefits on August 27, 2010, which was denied upon initial determination on October 4, 2010, within two years of her application dated May 11, 2012. Plaintiff apparently sought to reopen the prior application. (AR at p. 34). The ALJ, however, determined reopening was not warranted because the record did not "contain new and material evidence or evidence establishing clear error on the face of the prior denial determination that could be found to establish good cause for reopening." (AR at p. 12). As such, the prior denial determination constituted a final and binding determination of disability through October 4, 2010. (AR at p. 12).

An ALJ necessarily considers the record of the prior decision in determining whether there has been a substantial change in the claimant's condition since that time that would warrant reopening. *Krumpelman v. Heckler*, 767 F.2d 586, 589 (9th Cir. 1985). A decision not to reopen a previously adjudicated claim for social security benefits is discretionary and therefore, not considered a "final" decision within the meaning of 42 U.S.C. §405(g). *Id*. at 588. District courts have no jurisdiction to review a refusal to reopen a claim for disability benefits or a determination that such a claim is res judicata. *Id*.

Plaintiff cannot challenge the ALJ's determination to not reopen her prior claim. Nevertheless, she asserts that medical reports from prior to October 4, 2010 "support [her] consistent symptom claims and observations of these providers." The ALJ addressed these reports in her decision:

> The Department of Social and Health Services opinions from James Goodwin, Psy.D., Caitilin Newman, M.S., and Dr. Arnold, dated October 7, 2008, December 14, 2009, and July 22, 2010, respectively, are given little weight. These opinions are for the period covered under the prior adjudication ending October 4, 2010, and are relevant to the claimant's functioning for that period. Moreover, these opinions are too remote in time to show the claimant's level of functioning for the current adjudicatory period. In addition, examining mental health professionals performed perfunctory evaluations of the claimant and provided limited details as to the basis for the opinions.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

(AR at p. 23).

In October 2008, Plaintiff was referred to Dr. Goodwin for evaluation and treatment. He noted that Plaintiff was "currently taking prescriptions of methadone and a benzodiazepine (not good)." (AR at p. 296). Plaintiff reported a history of problems with illicit drug use and "current problems with illicit drug use in early full remission." (*Id*.) Her previous psychological/psychiatric contacts included two times in inpatient drug treatment. (*Id*.). Dr. Goodwin diagnosed "Major Depressive Disorder Recurrent Moderate-Severe" and "Opioid Dependence Early Full Remission x8 mos." (*Id*.). His recommendation was drug and alcohol evaluation and treatment; re-evaluation of the need for benzodiazepines; and starting treatment with antidepressants. (*Id*.). Dr. Goodwin completed a Department of Social and Health Services (DSHS) "Psychological/Psychiatric Evaluation" form in which he opined that drug and alcohol evaluation and treatment was likely to decrease the severity of Plaintiff's condition (AR at p. 290), and that drug and alcohol abuse significantly exacerbated the Plaintiff's condition. (AR at p. 291). Dr. Goodwin performed a mini-mental status exam (MMSE) of Plaintiff (AR at pp. 293-94), but there was no other testing. He opined that Plaintiff had a number of "marked" and "severe" cognitive and social limitations. (AR at p. 291). A "marked" limitation constitutes a "very significant interference" with the ability to perform basic work-related activities, while a "severe" limitation constitutes an inability to perform one or more basic work-related activities.

///
///
///
///
///
///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

LMHC Caitilin Newman performed a MMSE of Plaintiff in December 2009, as well as a PHQ-9[4] and a GAD-7[5] to evaluate depression and anxiety respectively. (AR at pp. 285-288). She diagnosed Plaintiff with "Major Depression, severe" and "Adjustment DX w/ mixed anxiety and depression." (AR at p. 281). She indicated that Plaintiff's mental health symptoms were affected by substance abuse, specifically OxyContin, and that Plaintiff had been in treatment for seven months and "clean" since December 2008. (*Id.*). She opined that Plaintiff had a number of "marked" cognitive and social limitations. (AR at p. 282). She recommended Plaintiff undergo mental health therapy. (AR at p. 283). She indicated that Plaintiff presented with a "very flat affect, tearful, very depressed." (AR at p. 284).

John Arnold, Ph.D., completed a DSHS evaluation form regarding Plaintiff in July 2010. He indicated he had been presented with no records to review, that Plaintiff had been in counseling and had made progress and had never been hospitalized for psychiatric reasons. (AR at p. 269). He diagnosed Plaintiff with "Opioid Dependence (OxyContin), "Early Full Remission (per client report)/Dysthymic Disorder." (AR at p. 271). He indicated that Plaintiff's mental health symptoms were affected by substance abuse or dependence in that OxyContin might increase her symptoms of loss of motivation and interest, sadness/crying, and worrying, nervousness and being antsy. (*Id.*). He opined that Plaintiff had, at most, some "moderate" cognitive and social limitations (significant interference with ability to perform basic work-related activities). (AR at p. 272). According to Dr. Arnold at the time:

---

[4] The Patient Health Questionnaire-9 objectifies and assesses degree of depression severity. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/

[5] The General Anxiety Disorder-7 measures severity of anxiety, mainly in outpatients. https://www.ncbi.nlm.nih.gov/pubmed/16717171

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

> [Plaintiff] will be able to remember locations and simple work like procedures. She will be able to understand, remember and carry out simple verbal and written instructions. She will be able to make simple work related decisions. She will be able to ask simple questions and request assistance. She will be able to adhere to basic standards of neatness and cleanliness. She will be aware of normal hazards and take appropriate precautions. She will be able to travel in unfamiliar places and use public transportation.

(Tr. at p. 272).

Among other things, Dr. Arnold recommended Plaintiff undergo cognitive behavioral therapy and individual counseling, have the WAIS-IV[6] administered to her, and that she continue with drug and alcohol treatment. (AR at p. 273).

Dr. Arnold also administered the PAI (Personality Assessment Inventory) to Plaintiff "to add information regarding her emotional functioning." The doctor deemed Plaintiff's profile valid and indicated "[s]he did not respond in a more negative or positive [way] than the clinical picture would warrant." Per Dr. Arnold, the PAI revealed Plaintiff to be suffering from significant distress, with particular concern about her physical functioning. He indicated Plaintiff was likely to be plagued by thoughts of worthlessness, hopelessness and personal failures, and that she was "also likely to be plagued by worry to the degree that her ability to concentrate and attend are significantly compromised." (AR at p. 274).

W. Scott Mabee, Ph.D., completed a DSHS evaluation form regarding Plaintiff in March 2011. Dr. Mabee indicated there were no records to review and that Plaintiff had not been in counseling. (AR at p. 336). Dr. Mabee performed a Mental Status Examination (MSE). (AR at pp. 341-43). He diagnosed Plaintiff with "Opioid Dependence (OxyContin), Sustained Full Remission (per client report)/Dysthymic Disorder/Adjustment Disorder with Anxiety." (AR at p. 337). He indicated that opioids might increase certain of Plaintiff's symptoms, including increase in

---

[6] Wechsler Adult Intelligence Scale-Fourth Edition.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 10**

agitation, anxiety and confusion, and decrease in concentration, attention, motivation. (AR at p. 338). He opined that Plaintiff had mild to moderate cognitive and social limitations. (*Id*.). According to Dr. Mabee's "Medical Source Statement:"

> [Plaintiff] will be able to remember locations and work like procedures. She will be able to understand, remember and carry out simple verbal and written instructions. She will be able to concentrate for limited periods. She will be able to make very simple work related decisions. She will be able to ask simple questions, request assistance and accept instructions. She will be able to adhere to basic standards of neatness and cleanliness. She will be able to use the bus but is very nervous on it.

(AR at p. 339).

Dr. Mabee indicated that mental health intervention was likely to restore or substantially improve Plaintiff's ability. (AR at p. 339).

In September 2011, Dr. Arnold completed another DSHS evaluation form regarding the Plaintiff. He reviewed the prior assessment by Dr. Mabee. (AR at p. 356). He diagnosed Plaintiff with "Dysthymic Disorder/Bereavement GAD." (AR at p. 357). Based on Plaintiff's self-report, Dr. Arnold indicated there were no mental health symptoms affected by substance abuse or dependence. (AR at p. 358). Plaintiff told Dr. Arnold she had "maintained her clean and sober lifestyle, since her last GAU[7] assessment." He opined that Plaintiff had mild to moderate cognitive and social limitations, with one exception being a marked limitation in ability to communicate and perform effectively in a work setting with public contact. (AR at p. 358). He repeated verbatim, however, the "Medical Source Statement" contained in Dr. Mabee's earlier evaluation. (AR at p. 359). He concurred with Dr. Mabee that mental health intervention was likely to restore or substantially improve Plaintiff's ability to work. (AR at p. 359). He noted that Plaintiff reported a significant increase

---

[7] General Assistance Unemployable. A Washington DSHS program providing cash and medical assistance to adults with temporary incapacities.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

in anxiety/depression since she was last seen (presumably by Dr. Mabee in March 2011). (*Id*.).

At the September 2014 hearing, Plaintiff's counsel presented a hypothetical to the VE based on the limitations opined by Dr. Arnold in his September 2011 evaluation: moderate limitation in ability to understand, remember and persist in tasks by following complex instructions, ability to learn new tasks, ability to perform routine tasks without undue supervision, ability to communicate and perform effectively in a work setting with limited public contact, ability to maintain appropriate behavior in a work setting; and marked limitation in ability to communicate and perform effectively in a work setting with public contact. The VE responded that such an individual would not be capable of performing any work. (AR at p. 62).

At the hearing, the ALJ indicated she would be sending the Plaintiff out for a consultative examination. (AR at p. 50). Jay M. Toews, Ed.D., conducted this examination on November 4, 2014. Dr. Toews reviewed Plaintiff's mental health record, including the March 2011 and September 2011 evaluations by Drs. Mabee and Arnold. (AR at pp. 485-86). Plaintiff denied having had any mental health treatment. Dr. Toews found Plaintiff to be inconsistent in reporting about anxiety and depression, and found she exhibited no signs of depression or anxiety. (AR at p. 486). Plaintiff indicated she had completed substance abuse treatment two months ago and was not presently using drugs or alcohol. (AR at p. 487). Dr. Toews assessed Plaintiff's mental health functioning as follows:

> Her cognitive functioning appears to be in the Low Average range by MSE [Mental Status Examination]. Memory functioning is in the Low Average Range.[8] Anxiety and depression associated with polysubstance cessation is

---

[8] Plaintiff was administered the WMS-IV (Wechsler Memory Scale) by Dr. Toews.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 12**

> treatable. She need[s] to be encouraged to remain clean, and assisted to develop a solid support system. Additional psychosocial treatment such as vocational rehabilitation training should be made available.
>
> She is capable of remembering and executing detailed instructions. She is capable of at least superficial interactions with co-workers. She would have moderate to marked limitations in ability to interact with the general public. She is able to make routine decisions and judgments in a work situation. She would function best in a low stress environment. She is capable of managing funds as long as she remains clean.

(AR at p. 488).

Dr. Toews diagnosed Plaintiff with "Opioid Dependence in self-reported full remission" and "Adjustment Disorder, Mixed, related to life changes associated with early recovery." (AR at p. 488). He opined that Plaintiff was moderately limited in her ability to interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting. (AR at p. 491). He opined that Plaintiff was moderately limited in her ability to understand and remember complex instructions and carry out complex instructions, and that she was markedly limited in her ability to make judgments on complex work-related decisions. (AR at p. 492).

The ALJ gave "significant" weight to the opinions of Dr. Toews. (AR at p. 21). She deemed her RFC finding consistent with his opinions, with the exception that she found Plaintiff capable of brief superficial contact with the general public based on Plaintiff's testimony that she used public transportation six days a week and her frequenting of the grocery store and the library. (*Id*.). The ALJ also found that Plaintiff's RFC for simple and routine tasks and no more than lower semi-skilled tasks, brief superficial contact with the general public, superficial contact with coworkers, and no cooperative tandem work with coworkers, was consistent with the limitation regarding a low stress work environment. (*Id*.). The ALJ noted that Dr. Toews' evaluation was the only one in the record that relied on clinical testing (Trail

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

Making Test and WMS-IV) other than a mini-mental status examination.  Therefore, according to the ALJ, this supported giving Dr. Toews' evaluation more weight than the other evaluations.  (*Id*.).  Furthermore, because Dr. Toews' evaluation was made after the Plaintiff was purportedly in remission from illicit substances, the ALJ found that the limitations opined by him could be viewed as Plaintiff's level of functioning absent substance abuse.  (*Id*.).

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition.  If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given.  *Id*.  "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Initially, it is not readily apparent that the opinions of Dr. Toews diverges significantly from those rendered previously by Drs. Mabee and Arnold.  The identical "Medical Source Statement" of Drs. Mabee and Arnold does not appear manifestly contrary to the assessment of Dr. Toews that Plaintiff is capable of remembering and executing detailed instructions and capable of superficial interactions with co-workers; would have moderate to marked limitations in ability to interact with the general public; is able to make routine decisions and judgments; would function best in a low stress environment; and is capable of managing funds as long as she remains clean.  Nevertheless, it is true that Dr. Toews conducted a more thorough evaluation of the Plaintiff.  Furthermore, in all of the evaluations pre-

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 14**

dating Dr. Toews' evaluation, with one exception[9], it was the opinion of the evaluator that Plaintiff's substance abuse was clearly a significant factor exacerbating her mental health symptoms, recognizing that even Dr. Toews, like the previous evaluators, relied on Plaintiff's self-reporting as to whether she was currently using illicit substances.

Without substance abuse, a legitimate inference by the ALJ was that Plaintiff's mental health symptoms, and her resulting functional limitations, are not as severe. To the extent that Dr. Toews' opinions in fact contradicted the opinions of Drs. Mabee and Johnson (and the opinions of the evaluators prior to October 2010), the ALJ offered specific and legitimate reasons for according more weight to the opinions of Dr. Toews.

**SYMPTOM TESTIMONY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995,

---

[9] In his July 2010 evaluation, Dr. Arnold indicated that Plaintiff's mental health symptoms were affected by substance abuse, but he indicated to the contrary in his September 2011 evaluation. He did so, however, based on the Plaintiff's self-report that she had been clean and sober since her last assessment, presumably the one by Dr. Mabee. The record, as discussed above and set forth in the ALJ's decision (AR at pp. 19-20) bears out that Plaintiff consistently experienced substance abuse issues from 2008 to 2014, notwithstanding her professing on several different occasions to be "clean."

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff asserts it "is only the ALJ's theory that [Plaintiff's] mental diagnoses and mental limitations are due to substance abuse" and asserts "[t]he ALJ's conclusion that her drug and alcohol abuse are material to her disability are incorrect." (ECF No. 23 at p. 6). As the discussion of the medical evidence reveals, it is not merely the ALJ's theory that Plaintiff's mental health limitations are exacerbated by substance abuse. It is the near unanimous opinion of the examining mental health evaluators that Plaintiff's substance abuse is material to her claimed disability. Their evaluations, in themselves, constitute clear and convincing reasons to reject any assertion by Plaintiff that her mental health symptoms are of disabling severity, independent of substance abuse. Accordingly, even if the other reasons cited by the ALJ for discounting Plaintiff's symptom testimony (e.g., failure to seek regular treatment for mental health symptoms, inconsistent reporting of substance abuse history, drug seeking behavior, daily living activities) are not clear and convincing, there is still substantial evidence supporting the ALJ's discounting of
///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

Plaintiff's symptom testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155. 1162-63 (9th Cir. 2008).

## CONCLUSION

The ALJ's mental RFC determination is supported by substantial evidence in the record. Therefore, she posed a proper and complete hypothetical to the VE pursuant to which the VE opined Plaintiff could perform jobs existing in significant numbers in the national economy. The ALJ rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports her decision that Plaintiff is not disabled.

Defendant's Motion For Summary Judgment (ECF No. 22) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 14) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___12th___ day of October, 2017.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 17**